# IN THE COURT OF APPEALS OF IOWA

No. 21-0043
Filed April 14, 2021


**IN THE INTEREST OF I.S., C.W., H.W., S.W., and T.J.,**
**Minor Children,**

**T.J., Mother,**
        Appellant,

**C.W., Father of C.W.,**
        Appellant,

**STATE OF IOWA,**
        Appellant,

**H.W., S.W., and T.J., Minor Children,**
        Appellants.
_____


        Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic,

District Associate Judge.


        Multiple appeals follow the termination of parental rights to five children.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH**

**DIRECTIONS.**


        Elizabeth A. Batey of Vickers Law Office, Greene, for appellant mother.

        Becky Wilson of Elwood, O'Donohoe, Braun, White, LLP, Charles City, for

appellant father.

        Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellant State.

Mark Milder, Denver, attorney for appellants minor children.

Danielle M. Ellingson, Eggert, Erb, & Ellingson, P.L.C., Charles City, guardian ad litem for appellants minor children.

Considered by May, P.J., and Greer and Schumacher, JJ.

**MAY, Presiding Judge.**

Multiple appeals follow the termination of parental rights to five children: I.S., C.W., H.W., S.W., and T.J.[1]  The mother appeals the termination of her parental rights to all five children.  C.W.'s father appeals the termination of his parental rights to C.W.[2]  H.W., S.W., and T.J. appeal the termination of the mother's parental rights.[3]  The State also appeals the termination of the mother's parental rights as to H.W., S.W., and T.J.[4]  Conversely, the State requests we affirm termination of parental rights to I.S. and C.W.  We affirm in part, reverse in part, and remand the case to the juvenile court with directions.

**I. Background Facts and Proceedings**

In August 2019, the family came to the attention of the Iowa Department of Human Services (DHS) after the mother punched C.W. in the face.  The mother was intoxicated and believed C.W. had stolen $2 from her.  She told C.W. to leave the one-bedroom motel room where they were staying.  When law enforcement

---

[1] I.S. was born in 2013.  C.W. was born in 2010.  H.W. was born in 2006.  S.W. was born in 2005.  And T.J. was born in 2003.

[2] The parental rights for I.S., H.W., S.W., and T.J.'s fathers were also terminated.  But they do not appeal.

[3] All five children were originally represented by an attorney who served as both attorney and guardian ad litem.  Just prior to the termination hearing, that attorney withdrew, and the district court appointed a separate attorney to serve as the attorney for the three older children and a new guardian ad litem for all five children.  A court appointed special advocate was also appointed for all five children.

[4] The State filed petitions to terminate parental rights for all five children.  At the termination hearing, DHS approved of termination for I.S. and C.W. but was in favor of a guardianship with grandmother for H.W., S.W., and T.J.  It does not appear DHS was represented by separate counsel.  The guardian ad litem for all five children approved of termination for I.S. and C.W. and either termination of parental rights or an extension of time for H.W., S.W., and T.J.  The guardian ad litem did not believe a guardianship with the grandmother was an option for H.W., C.W., and T.J.

officers arrived to ensure the safety of the other children, the mother denied that C.W. was her child. The mother was uncooperative and would not allow DHS to conduct a walk-through of the residence. I.S. and S.W. were in the mother's care at the time. H.W. and T.J. were residing with their maternal grandmother. The grandmother allowed DHS to view her home and no safety concerns were noted. So all five children were temporarily placed with the grandmother.

In late August, all five children were adjudicated as children in need of assistance (CINA). I.S. and S.W. were placed with another relative. C.W. was placed with his father. H.W. and T.J. continued to reside with the grandmother. We review the children in turn, according to their placements.

**A. The Youngest Child, I.S.**

In September, I.S. began displaying alarming behaviors and physically acting out. The mother failed to assist I.S. in her placement with a relative, according to the plan set in place by DHS. As a result, I.S. was placed in family foster care.

In November and December, I.S. had holiday visits with the mother, H.W., C.W., and T.J. while the grandmother supervised. Several concerns about the visits were reported to DHS. Afterward, I.S.'s behaviors regressed and her foster home could no longer care for her needs. I.S. was placed in a psychiatric medical institution for children (PMIC).

Part of I.S.'s care at the PMIC included family therapy with the mother. However, the mother failed to consistently attend I.S.'s therapy. The mother's absences had a negative effect on I.S. I.S. displayed aggression and inappropriate actions with her peers. At the time of the termination hearing, I.S. remained in the

PMIC and was not recommended for discharge. A foster home had not yet been located for I.S.

**B. The Second-Youngest Child, C.W.**

In October 2019, C.W.'s father tested positive for cocaine, amphetamines, methamphetamine, and THC. C.W. was placed with other relatives. In November, the father again tested positive for methamphetamine and THC. Around this time, the father moved to Minnesota to live with his girlfriend.

Shortly thereafter, C.W. was hospitalized over concerns that he would harm himself. In December, C.W. was again hospitalized for suicidal and violent threats. After C.W.'s discharge, DHS could not locate a suitable foster home for him. He was placed in various shelters and one short-term family foster home. In September 2020, C.W. was placed in a new family foster home. At the time of the termination hearing, it was unknown whether C.W.'s placement was a permanency option.

C.W.'s father moved back to Iowa in late February 2020. But he did not re-engage with DHS until October. C.W. was hesitant to reunite with his father after not seeing him for almost a year. C.W. and his father participated in phone calls and a few supervised visits.

**C. The older children, H.W., S.W., and T.J.**

In November 2019, S.W. joined H.W. and T.J. with the grandmother. H.W., S.W., and T.J. have remained in their grandmother's care for the duration of the case. There have been concerns over the children's progress in school. But the record reflects this difficulty has been exacerbated by COVID-19 restrictions to in-person learning. And all three have continued to work on getting caught up. H.W.,

S.W., and T.J. have not exhibited any extreme behavioral concerns. All three children have expressed a desire to return to their mother's care, or in the alternative, remain in their grandmother's care under a guardianship.

## II. Analysis

In December 2020, the mother's parental rights were terminated to all five children under Iowa Code section 232.116(1)(f) (2020). C.W.'s father's parental rights were also terminated under section 232.116(1)(f). Both parents appeal. H.W., S.W., and T.J. appeal. And the State appeals on behalf of H.W., S.W., and T.J. Due to their differences in age and circumstance, we address the two younger children separate from the three older children.

## A. Standard of Review

We review termination proceedings de novo. *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citation omitted).

We generally review evidentiary rulings for an abuse of discretion. *State v. Wilson*, 878 N.W.2d 203, 210 (Iowa 2016); *see also In re B.H.*, No. 17-1190, 2017 WL 4842627, at *3 (Iowa Ct. App. Oct. 25, 2017). "The standard of review for hearsay, however, is for errors at law." *State v. Buelow*, 951 N.W.2d 879, 884 (Iowa 2020).

**B. Three-Step Termination Analysis**

We generally use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We must determine: (1) whether grounds for termination have been established, (2) whether termination is in the children's best interests, and (3) whether we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. We also address any additional claims raised. *In re K.M.*, No. 19-1637, 2020 WL 110408, at *1 (Iowa Ct. App. Jan. 9, 2020).

**C. The Younger Children, I.S. and C.W.**

We begin our analysis with an evidentiary issue. The mother argues the juvenile court improperly admitted "portions of the [guardian ad litem] report that contained hearsay statements." "Iowa Code section 232.96(6) allows the admission of a report, study, record, or other writing made by the DHS, a juvenile court officer, or a peace officer, notwithstanding any objection to hearsay statements contained within, if it is relevant and not unduly prejudicial." *In re N.N.*, 692 N.W.2d 51, 54 (Iowa Ct. App. 2004). Iowa's juvenile courts are generally "allowed to make use of hearsay and other evidence that would normally be excluded in our district courts." *In re A.M.*, 856 N.W.2d 365, 373 (Iowa 2014); *accord In re B.H.*, No. 18-1251, 2019 WL 478748, at *2 (Iowa Ct. App. Feb. 6, 2019) (collecting cases). In any event, because we have not relied on the report in our de novo review, reversal is not required. *See Erickson v. Blake*, No. 15-0251, 2016 WL 1130578, at *1 (Iowa Ct. App. Mar. 23, 2016) ("To the extent any evidence was improperly considered by the district court, reversal is not required given our de novo review of the record on appeal.").

Now we turn to the merits. The mother and C.W.'s father both claim the State failed to satisfy the statutory grounds authorizing termination. The juvenile court found grounds authorizing termination for both parents under section 232.116(1)(f). Paragraph (f) authorizes termination when:

(1) The child is four years of age or older.
(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(f). Both parents challenge the fourth element of paragraph (f), whether I.S. and C.W. could be returned to the mother's home and whether C.W. could be returned to the father's home. The fourth element is satisfied when the State establishes a child cannot be safely returned to the parent at the time of the termination hearing. *In re T.W.*, No. 20-0142, 2020 WL 1881115, at *1–2 (Iowa Ct. App. Apr. 15, 2020).

The State highlights the father's struggle with maintaining sobriety and personal strife that led to his disappearance from C.W.'s life for almost a year. The father testified at the termination hearing to being drug-free for only two months. While we acknowledge the father had personal difficulties during the life of this case, he was not there for C.W. for almost a year of his life. He re-engaged with DHS only a few months prior to the termination hearing. And by the time of the termination hearing, he had not progressed past fully-supervised visits lasting only two hours each.

The State also highlights the mother's inability to consistently demonstrate that she can provide for her children, lengthy history of dishonesty, and failure to identify concerns related to her relationship with her paramour. Throughout the life of this case, the mother has struggled with alcohol abuse. This case started when she was intoxicated with her paramour, struck C.W., and told C.W. to leave. She has continued a relationship with her paramour despite numerous safety concerns both from DHS and the children themselves. At the termination hearing, the mother testified to ending the relationship with her paramour two months previously. But she has repeatedly lied to DHS about their relationship and her engagement in services. She has not consistently attended I.S.'s family therapy. And by the time of the termination hearing, she had not progressed past fully-supervised visits.

Like the juvenile court, we find I.S. and C.W. could not have been returned to the mother's care at the time of the termination hearing nor could C.W. have been returned to his father's care at the time of the termination hearing. *See In re C.S.*, No. 19-1126, 2019 WL 6358447, at *2 (Iowa Ct. App. Nov. 27, 2019) (affirming termination where "the mother's attitude toward the children's injuries gives us little confidence she would ensure their safety in the future")*; see also In re L.B.*, No. 18-1017, 2018 WL 3650370, at *1 (Iowa Ct. App. Aug. 1, 2018) (collecting cases affirming termination of a parent's parental rights when the parent has a history of substance abuse). This step in our analysis is satisfied. *See Z.P.*,

948 N.W.2d at 524 (affirming termination where the parent "was not prepared to assume a parenting role at the time of trial").[5]

Our next step centers on the children's best interests. *See* Iowa Code § 232.116(2). We "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

Like the juvenile court, we conclude termination is in the children's best interests. We do not question the parents' affection for their respective children. Even so, we cannot ignore the safety concerns presented to I.S. and C.W. if they were to return to the mother's care or if C.W. were to return to the father's care. I.S. and C.W. have both presented significant mental-health and behavioral concerns that require consistent attention. Given their history, we are not confident

---

[5] The father raises two additional concerns. First, the father claims "the State failed to provide clear and convincing evidence that [C.W.] had been removed from the physical custody of the father for at least twelve of the last eighteen months." But the record shows that C.W. was removed from the father's care on October 3, 2019. And the termination hearing commenced on November 19, 2020. So we find C.W. was removed from the father's physical custody for at least twelve of the last eighteen months. *See* Iowa Code § 232.116(1)(f)(3).

The father also claims "the State has failed to show by clear and convincing evidence that returning the child to father would subject the child to adjudicatory harm under Iowa Code § 232.2(6)." Under our case law, the State was only required to prove C.W. could not be safely returned to the father at the time of the termination hearing. *See T.W.*, 2020 WL 1881115, at *2–3 (collecting cases). The State met this burden.

either parent will be able to adequately meet their respective children's needs in the foreseeable future. *See In re C.W.*, 554 N.W.2d 279, 283 (Iowa Ct. App. 1996). The second step in our analysis is complete.

We move to our third step, whether we should apply a section 232.116(3) exception to termination. Section 232.116(3) exceptions are permissive, not mandatory. *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019). And the burden of establishing a section 232.116(3) exception rests with the parents. *See A.S.*, 906 N.W.2d at 476.

The mother claims that C.W. is over the age of ten and objects to termination. From this, we believe she is relying on section 232.116(3)(b) to prevent termination for C.W. It authorizes the court to forgo termination if "[t]he child is over ten years of age and objects to the termination." Iowa Code § 232.116(3)(b). At the time of the termination hearing, C.W. was ten years old. But the mother does not point to evidence showing C.W. objected to termination of her parental rights. So we decline to apply section 232.116(3)(b).

The mother emphasizes her bond with I.S. and C.W., and the father emphasizes his bond with C.W. We believe they both rely on section 232.116(3)(c). It authorizes the court to forgo termination if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c).

The juvenile court found there was "not clear and convincing evidence that termination would be detrimental to the child[ren]." *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). Based on our de novo review, we agree. We do not believe

termination is detrimental. Rather, as explained, termination is in the children's best interests. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010) ("[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent]'s inability to provide for [the child]'s developing needs."). So we decline to apply section 232.116(3)(c) to either parent.

The mother also reiterates that I.S. was placed in a PMIC. From this, we believe she is relying on section 232.116(3)(d) to prevent termination for I.S. Paragraph (d) allows the court to deny termination if "it is necessary to place the child in a hospital, facility, or institution for care and treatment and the continuation of the parent-child relationship is not preventing a permanent family placement for the child." Iowa Code § 232.116(3)(d). It was necessary to place I.S. in a PMIC after her foster care placement failed. At the time of the termination hearing, I.S. was not recommended for release from the PMIC. While the mother's relationship with I.S. does not directly interfere with the placement process, the mother has been inconsistent in attending I.S.'s therapy. The mother's actions have demonstrably disappointed and frustrated I.S. Terminating the mother's parental rights will allow DHS to seek an adoptive placement for I.S. upon her release. Termination remains in I.S.'s best interest. So we decline to apply section 232.116(3)(d). *See, e.g., In re M.H.*, No. 14-0884, 2014 WL 4635462, at *3 (Iowa Ct. App. Sept. 17, 2014) (affirming termination despite the child being placed in a facility for treatment); *In re J.R. II*, No. 12-1239, 2012 WL 4903048, at *3 (Iowa Ct. App. Oct. 17, 2012) (same).

Finally, we address both parents' arguments that they should be given an additional six months to work toward reunification. The juvenile court *may* defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b); *see also* Iowa Code § 232.117(5). The mother and C.W.'s father have both struggled to engage with DHS. Due to a delay in the termination hearing, the parents were essentially given an additional six months. We cannot point to any specific and lasting change we anticipate will occur within the next six months that would facilitate reunification and warrant granting additional time. We agree with the juvenile court that the mother and C.W.'s father should not be given additional time to work toward reunification.

For the foregoing reasons, we affirm the juvenile court's order terminating the mother's parental rights to I.S. and C.W. and the father's rights to C.W.

**D. The Older Children, H.W., S.W., and T.J.**

The mother, the State, H.W., S.W., and T.J. all appeal the termination of the mother's parental rights and the district court's refusal to establish a guardianship with the grandmother. The attorney for all three children conveyed "their request that they be returned to the care, custody, and control of their mother" or "at a minimum, be granted more time."

Based on our analysis above regarding I.S. and C.W., we do not find H.W., S.W., and T.J. could be returned to the mother's care at the time of the termination hearing. *See Z.P.*, 948 N.W.2d at 524 (affirming termination where the parent "was

not prepared to assume a parenting role at the time of trial"). And we do not find that an additional six months to work toward reunification would be appropriate. *See* Iowa Code § 232.104(2)(b).

But the mother, the State, H.W., S.W., and T.J. all argue termination of the mother's parental rights is not in H.W., S.W., and T.J.'s best interests given their ages and objection to termination. We believe they all rely on section 232.116(3)(b) to prevent termination. Paragraph (b) allows the court to forgo termination if "[t]he child is over ten years of age and objects to the termination." Iowa Code § 232.116(3)(b).

At the termination hearing, it was clear that H.W., S.W., and T.J. were all over ten years of age and objected to the termination of their mother's parental rights. The children's attorney conveyed H.W., S.W., and T.J.'s "desire to remain in the current placement with their grandmother . . . pursuant to a guardianship" if they could not be returned to their mother's care. The DHS workers assigned to this case testified at the termination hearing that they recommend a guardianship for H.W., S.W., and T.J. with the grandmother. The grandmother had previously expressed an interest to DHS in being a guardian for the three older children.

Section 232.104(2)(d) sets forth several permanency options for the children's placement, including transferring "guardianship and custody of the child[ren] to a suitable person" or transferring "custody of the child[ren] to a suitable person for the purpose of long-term care." *See id.* § 232.104(2)(d)(1), (3). However, the placements enumerated in paragraph (d) can only be ordered if the court first finds that convincing evidence exists showing termination of the parent-child relationship is not in the children's best interests and that the children could

not be returned to the children's home even though "[s]ervices were offered to the child[ren]'s family to correct the situation which led to the child[ren]'s removal." *Id.* § 232.104(3)(a)–(c); *but see In re B.T.*, 894 N.W.2d 29, 33 (Iowa Ct. App. 2017) ("Generally, permanency orders are not preferred over the termination of parental rights.").

As noted, although services have been provided, the children could not be returned to their home. At the same time, we do not find the three oldest children's best interests are served by termination of the mother's parental rights. *See In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001) ("As in all juvenile proceedings, our fundamental concern is the best interests of the child."). This is not a case where the children's permanency is dependent on the mother's parental rights being terminated. The grandmother has cared for H.W., S.W., and T.J. for most of this case and will continue to do so regardless of whether the mother's parental rights are terminated. Similarly, the children's stability and long-term interests will not change if the mother's rights are not terminated and a guardianship is created instead. H.W., S.W., and T.J. are fourteen, sixteen, and seventeen, respectively. And they all wish to maintain a relationship with their mother. A guardianship with the grandmother serves the children's best interests and needs. *See B.T.*, 894 N.W.2d at 34.

Accordingly, we reverse termination of the mother's parental rights and remand to the juvenile court to enter an order transferring guardianship and custody of H.W., S.W., and T.J. to the grandmother pursuant to section 232.104(2)(d)(1). The juvenile court should review this order annually as mandated by section 232.104(8)(a), or more often if needed, to ascertain "whether

the best interest[s] of the child[ren are] being served." Alternatively, the juvenile court may close the CINA cases and "appoint a guardian pursuant to chapter 232D" as described in section 232.104(8)(b). We do not retain jurisdiction.

### III. Conclusion

We affirm termination of the mother's parental rights to I.S. and C.W. We also affirm termination of C.W.'s father's parental rights to C.W. We reverse the mother's termination of parental rights to H.W., S.W., and T.J. And we remand to the juvenile court to enter an order transferring guardianship and custody of H.W., S.W., and T.J. to the grandmother.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**